IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN L.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:20-CV-355 |
| | ) |
| KILOLO KIJAKAZI[2], Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

Plaintiff John L. ("John"), proceeding *pro se*, challenges the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. John asserts that the Administrative Law Judge ("ALJ") erred by finding that he could perform a range of sedentary work, as John contends that he cannot maintain a fast pace and cannot use his hands and wrists for fine manipulation.

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

I conclude that substantial evidence supports the Commissioner's decision in all respects.[3] Accordingly, I **RECOMMEND DENYING** John's Motion for Summary Judgment (Dkt. 10 & 16) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 12).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that John was not disabled under the Act. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

John filed for SSI and DIB on May 3, 2018, claiming that his disability began on June 14, 2016. R. 13. John's date last insured was March 31, 2019; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 13; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied John's applications at the initial and reconsideration levels of administrative

---

[3] The Commissioner did not request oral argument in this case. To the extent that John's brief requests oral argument, I find that a hearing will not aid in the decisional process and is thus unnecessary.

review. R. 205–64. On September 25, 2019, ALJ Michael Dennard held a hearing to consider John's claims for SSI and DIB. R. 32–63. John proceeded *pro se* at the hearing, which included testimony from vocational expert Mark Hyland. On October 15, 2019, the ALJ entered his decision analyzing John's claims under the familiar five-step process[4] and denying his claim for benefits. R. 14–24.

The ALJ found that John was insured at the time of the alleged disability onset and that he suffered from the severe impairments of ischemic heart disease/coronary artery disease; gout; obesity; psoriasis/dermatitis; hearing loss in the left ear; hypertension; and hyperlipidemia. R. 15. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 16–17.

The ALJ concluded that John retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. R. 18. Specifically, the ALJ found that John cannot climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; cannot work around unprotected heights; can have occasional exposure to hazardous machinery, dust, odors, fumes, pulmonary irritants, extreme temperatures, vibration and operating a motor vehicle; and can have exposure to moderate noise. Id. The ALJ determined that John could not perform his past relevant work as an off bearer, mixer, hose maker, material handler, utility worker and electrician. R. 22. However, the ALJ determined that

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

John could perform other jobs in the national economy, such as production assembler, addressing clerk and stuffer. R. 23–24. Thus, the ALJ concluded that John was not disabled. R. 24. John appealed the ALJ's decision and submitted additional records to the Appeals Council for consideration. The Appeals Council denied his request for review on April 20, 2020. R. 1–3.

## ANALYSIS

John argues the ALJ wrongly determined that he was not disabled and urges that he be awarded benefits. The Commissioner asserts that the ALJ appropriately considered John's treatment history, function report, and the medical opinions, and the decision is supported by substantial evidence.

### A. Medical History

John was in his mid-forties during the relevant period (June 2016 through October 2019), and alleged disability due to heart problems, gout in his feet, psoriatic arthritis in his hands and hearing loss in his left ear. R. 481. John underwent coronary artery bypass grafting in three arteries in June 2016. R. 734–35, 744–46. John received routine cardiac follow up post-surgery and complained of occasional shortness of breath. R. 1193. In September 2016, John's cardiologist, Daniel Osimani, M.D., released John to resume normal activities without restrictions. Id. John's physical examinations were normal with full range of motion in his extremities, and he was encouraged to continue a low-fat diet and exercise. R. 1177.

In August 2018, John followed up with his primary care physician and requested an appointment with a new cardiologist. R. 1549–52. John reported not taking his cholesterol medications due to side effects. Tessa Wickline, LPN, noted that John had significant psoriasis. R. 1550. John noted joint pain, itching, rash and dizziness. His objective medical exam was normal, including normal musculoskeletal range of motion. R. 1551.

4

On August 20, 2018, John treated with cardiologist Ali M. Hama Amin, M.D., and complained of limited activities due to arthritis, psoriasis, shortness of breath and tightness in his chest. He reported feeling lightheaded when he stands up fast, and painful swelling of his left tarsometatarsal joint for the past few days. R. 1545. His medical examination was normal, aside from swelling, redness and tenderness in his tarsal metatarsal joint consistent with gouty arthritis, and a diffuse, patchy, scaly rash typical for psoriasis on his upper extremity, lower extremity and trunk. R. 1548. Dr. Amin determined that John's hypertension is reasonably controlled with medication, but his hyperlipidemia is not well controlled, and adjusted his medication. R. 1548. Dr. Amin found that John's psoriasis was poorly controlled and recommended a rheumatologist consult. Dr. Amin prescribed medication for John's gout, and recommended hydration for his history of dizziness. Id.

On September 12, 2018, William Humphries, M.D, performed a consultative examination of John. R. 1569. Dr. Humphries noted that John's chief medical condition is gout that affects his ankles and feet intermittently. Id. John complained of arthritis in his hands with joint swelling and pain for the last 20 years. John also noted tendinitis in his elbows, pain in his hips, dyspnea on exertion, dizzy spells and diminished hearing in his left ear. R. 1569–70. Dr. Humphries noted on examination that John's upper extremity joints reveal no significant deformity or tenderness, except mild enlargement of some of the IP joints with tenderness in the elbows and wrists. John's lower extremity joints revealed no significant tenderness or deformity, except mild bunion formation. John had no sensory loss in his extremities, a 4.5/5 grip strength, adequate fine manipulation, a mildly antalgic gait on the left and poor tandem gait. R. 1571. Dr. Humphries diagnosed John as overweight, with hypertension, gouty arthritis, diffuse psoriasis,

5

coronary artery disease with ongoing stable angina, dyspnea on exertion, diminished hearing in the left ear, and history of dizzy spells of unknown etiology. R. 1572.

Dr. Humphries determined that John can sit for 6 hours in an 8-hour day but cannot stand or walk for even 1 hour in an 8-hour day. Dr. Humphries found that John can lift 20 pounds occasionally and 10 pounds frequently, cannot perform foot controls, cannot climb, kneel, or crawl, and should avoid heights, hazards, and fumes. R. 1573.

On October 2, 2018, state agency physician Jack Hutcheson, M.D., reviewed John's records and determined that he can perform a range of sedentary work, including standing and/or walking for 2 hours in an 8-hour day, sitting for 6 hours in an 8-hour day, occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and never climbing ladders, ropes or scaffolds. R. 213. Dr. Hutcheson found that John had no manipulative limitations, limited hearing on the left, and should avoid concentrated exposure to extreme temperatures, vibration, fumes, and hazards. R. 214. On November 7, 2018, state agency physician William Rutherford Jr., M.D., reviewed John's records and agreed with most of Dr. Hutcheson's conclusions. R. 239–42. Dr. Rutherford agreed that John could perform a range of sedentary work, and found that John could frequently balance, stoop, kneel and crouch. R. 240.

In February 2019, John was treated for second and third degree burns on his arm caused by resting his arm on a woodstove while helping friends kill pigs over the weekend. R. 1586. John followed up with Dr. Amin on February 22, 2019, and reported that his coronary artery disease, hypertension, and dyslipidemia are stable with current medication and management. R. 1583. John noted joint pain, itching and rash. R. 1584. His examination was normal, aside from his psoriasis rash and the burns on his left arm. R. 1585. Dr. Amin continued John's

6

medical management of coronary artery disease, hypertension, and hyperlipidemia, and encouraged a low-fat diet and exercise. Id.

In May 2019, John presented for an audiogram, complaining of vertigo tinnitus. R. 1608. John reported gradual decrease in his hearing in his left ear, and episodes of vertigo that are worse in the morning. John's audiogram suggested normal hearing in his right hear and a severe to profound sensorineural hearing loss in his left ear. R. 1612. John was diagnosed with sensorineural hearing loss of his left ear, nonspecific dizziness, vestibular dysfunction of the left ear and tinnitus. R. 1613, 1616.

**B. RFC**

John asserts that he cannot perform the jobs provided by the vocational expert at the administrative hearing, noting that he can perform light weight work "but the speed you have to move I simply cannot do, any fast motion triggers dizzy spells." Pl. Br. Summ. J. p. 1. John also noted that his hands and wrists swell and "there is no way I could be effective with small parts and certainly not screwdrivers." Id. Because John is proceeding *pro se*, I will liberally construe his brief as a general challenge to the ALJ's RFC finding. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).[5]

An RFC is the most a claimant can still do despite his impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The Commissioner determines the RFC based on all the relevant evidence in the claimant's record and it must reflect the combined limiting effects of impairments that are supported by the medical evidence or the

---

[5] John's second letter to the Court, received February 1, 2021, references recent issues with his health, including difficulty with new medications, a "growth" on the top of his foot, and difficulty attending medical appointments during the COVID pandemic. See Dkt. 16. The relevant time period before the court is from June 14, 2016 (John's alleged onset date) to October 15, 2019 (the date of the ALJ's opinion). The treatment records John submitted to the Appeals Council are discussed in more detail below.

claimant's credible complaints. See Mascio v. Colvin, 780 F.3d 632, 638–40 (4th Cir. 2015). SSR 96-8p requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. 1996 WL 374184 (SSA) (July 2, 1996). Specifically, the ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). However, in Mascio, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.' " 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

John does not allege any specific errors in the ALJ's RFC, instead contending that he is unable to work. I find that the ALJ's RFC finding is supported by substantial evidence. The ALJ discussed John's testimony, his treatment records, and the medical opinion evidence, and

8

supported his RFC finding with evidence from the record. The ALJ reviewed John's medical records in detail in the opinion. R. 19–20. The ALJ acknowledged John's complaints of dizzy spells, swelling and pain in his feet, difficulty lifting and walking, and hearing loss in his left ear. R. 18–19. The ALJ noted that John had no difficulty hearing and responding to questions at the administrative hearing. R. 19.

The ALJ reviewed Dr. Humphries' opinion and found his opinion that John could sit for 6 hours in an 8-hour workday persuasive as it is supported by Dr. Humphries' findings that John had little abnormality in his back and lower extremities other than rash. The ALJ also found this restriction consistent with the overall medical evidence reflecting no difficulty sitting or abnormalities in the back. R. 20.

The ALJ did not agree with Dr. Humphries' conclusions that John could stand and walk less than 1 hour in an 8-hour day, could not operate foot controls, can never climb, kneel or crawl, and must avoid heights, hazards and fumes. Specifically, the ALJ agreed that John's ability to stand and walk is limited but found no evidence that he can do so less than one hour per day. R. 20. The ALJ stated, "[John] reported he can go grocery shopping, and he walks around some for exercise. This is consistent with [sic] the amount of walking necessary to do sedentary work, not less [as] Dr. Humphries opined." R. 20. The ALJ found Dr. Humphries' opinion that John cannot climb to be vague because it does not distinguish between climbing stairs, ladders, ramps, or scaffolds. Id. The ALJ also noted that Dr. Humphries did not cite evidence to support his opinion that John cannot operate foot controls. The ALJ noted that John had gouty arthritis in his lower extremities, but the overall medical evidence throughout the record does not show significantly limited range of motion. R. 21. The ALJ found that John can have occasional exposure to heights, hazards, and fumes, rather than Dr. Humphries' recommendation of no

9

exposure. The ALJ noted that John did not have significant respiratory abnormalities and there is little evidence and no objective evidence of vertigo and dizziness. R. 21.

The ALJ also did not agree with Dr. Humphries' conclusion that John could lift and carry 10 pounds frequently and 20 pounds occasionally. Considering John's complaints of shortness of breath on exertion, the ALJ further limited John to no more than sedentary work of lifting 10 pounds occasionally and less than 10 pounds frequently. R. 21.

The ALJ reviewed the opinions of Drs. Hutchison and Rutherford and found most of their opinions persuasive. R. 21. The ALJ noted that Drs. Hutchison and Rutherford reviewed all of the available evidence in the record when forming their opinions; that the records submitted after their opinions do not reflect significant worsening; that they supported their opinions with citations to medical evidence in the record; and their opinions are consistent with the totality of the medical evidence it the case which reflects mostly normal medical physical examination findings. R. 21. The ALJ found that John's gout and arthritis are accommodated by a limitation to sedentary work. The ALJ limited John to only occasional postural activities due to his report of vertigo and dizziness. The ALJ noted that Drs. Hutchinson and Rutherford did not provide a specific limitation for John's hearing; thus, the ALJ determined that John can work with no more than moderate noise due to his limited left ear hearing. R. 21.

The ALJ noted that John's treatment post-bypass surgery has been routine and conservative in nature, and generally successful in controlling his symptoms. In February 2019, John's cardiologist described his coronary artery disease, hypertension, dyslipidemia, obesity, and sleep apnea as stable. R. 1585. The ALJ found that John's objective medical evidence reflected mild abnormalities after his cardiac surgery, including tenderness and swelling in his

foot consistent with gout. The ALJ accommodated these issues by limiting John to sedentary work. R. 22.  The ALJ also addressed John's dizziness, stating,

> Even though the claimant may have experienced some shortness of breath with exertion or occasional dizziness when changing positions quickly, he was able to do many basic activities that are consistent with sedentary work.  The claimant was able to walk long enough to go grocery shopping. He also walked a little bit for exercise, cooked his own meals, and took care of a dog.  He even did some recreational activities, such as killing hogs with friends, which suggests the ability to do sedentary work.  The claimant generally only reported shortness of breath [with] prolonged walking or exertion, not sedentary activities or limited walking. He could pick up a 50-pound bag even though he struggled.

R. 22.

Thus, the ALJ concluded that John could perform a range of sedentary work.

When making an RFC assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating the persuasiveness of medical opinions, the most important factors considered are supportability and consistency.[6] Id.  When "medical opinions or prior administrative medical findings about the same issue are equally well–supported . . . and consistent with the record," the Commissioner will articulate how he considered the following factors: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

---

[6] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, the ALJ properly assessed the opinions of Drs. Humphries, Hutchison, and Rutherford, explained the weight he gave each of their conclusions and provided reasoning to support his conclusions. The ALJ provided the required narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). The court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a sufficient summary and explanation of John's medical records, his hearing testimony, and the ALJ's conclusions.  I find that the ALJ's RFC findings are supported by substantial evidence.

### C. Additional Evidence

John submitted additional records to the Appeals Council, dated from December 2012 through January 2020. The Appeals Council determined that the additional records dated prior to the ALJ's decision did not show a reasonable probability that they would change the outcome of the decision; and that the records dated after the ALJ's decision did not relate to the period at issue. R. 2.

The Appeals Council will review an ALJ's decision if it receives additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (effective Jan. 17, 2017). The Appeals Council will consider additional evidence only if the claimant shows good cause for not submitting the evidence to the ALJ. Id. § 404.970(b). Evidence is new if it is not duplicative or cumulative and evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96

(4th Cir. 1991). However, the Appeals Council need not review or consider new evidence that relates only to a period after the ALJ issues the decision. See 20 C.F.R. § 404.970. Additionally, the Appeals Council need not explain its reason for denying review of an ALJ's decision. Meyer v. Astrue, 662 F. 3d 700, 702, 706 (4th Cir. 2011).  When the Appeals Council denies review, this denial makes the ALJ's decision final, at which point, it is the decision of the ALJ, and not the procedural decision of the Appeals Council to deny review, that is subject to judicial scrutiny. See 20 C.F.R. §§ 404.967–981; Bowles v. Barnhart, 392 F. Supp. 2d 738, 742–43 (W.D. Va. 2005).

John does not provide reasoning to the Appeals Council or in his briefing to the Court to support a finding of good cause for his failure to provide any records dated prior to the ALJ's October 2019 decision.  Further, the records dated after 2019 are new but not material because there is no reasonable probability they would change the outcome of the decision.  The additional records relate to continued treatment of John's psoriatic arthritis, gout, burns on his arm, and difficulty swallowing.  R. 80–81.  For example, on February 18, 2020, John visited Carilion Clinic Rheumatology complaining of recurrent pain and swelling of his hands, wrists, elbows, and feet since 2003. R. 80.  John's physical examination revealed widespread psoriatic rash; full range of motion in his spine, shoulders, elbows, wrists, and hips; reduced range of motion in his knees and ankles; and puffy hands. R. 85. The physician assessed gout, psoriasis, probable psoriatic arthritis, and liver disease. R. 90.  These additional records do not reflect a change in John's condition that would relate back to the relevant period. Rather, they reflect a continuation of the conditions John suffered during the relevant period, which were considered by the ALJ, and resulted in an RFC of a limited range of sedentary work.  Accordingly, the new evidence presented provides no reason for remand.

## CONCLUSION

The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence. Here, substantial evidence supports the ALJ's opinion. In affirming the final decision of the Commissioner, I do not suggest that John is totally free from pain and distress. The objective medical record simply fails to document during the relevant period the existence of conditions that would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered the objective and subjective evidence in adjudicating John's claim for benefits and in determining that he can perform a limited range of sedentary work.

Accordingly, I **RECOMMEND AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Commissioner, **DENYING** John's motion for summary judgment, and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any

reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: August 4, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge